1    ROB BONTA, State Bar No. 202668
     Attorney General of California
2    JON S. ALLIN, State Bar No. 155069
     Supervising Deputy Attorney General
3    JEREMY DUGGAN, State Bar No. 229854
     Deputy Attorney General
4      1300 I Street, Suite 125
       P.O. Box 944255
5      Sacramento, CA 94244-2550
       Telephone:  (916) 210-6008
6      Fax:  (916) 324-5205
       E-mail:  Jeremy.Duggan@doj.ca.gov
7    *Attorneys for Defendants*
     *California Department of Corrections and*
8    *Rehabilitation, Aguilar, Duncan, Hernandez, Luna,*
     *Salcedo, and Velasquez*

9

                 IN THE UNITED STATES DISTRICT COURT
10
               FOR THE EASTERN DISTRICT OF CALIFORNIA
11
                          SACRAMENTO DIVISION
12

13

14   **ESTATE OF KENNETH DALE SUMNER,**        2:22-cv-01638-JAM-DB
     **et al.,**
15                                             **MEMORANDUM OF POINTS AND**
                                  Plaintiffs,  **AUTHORITIES IN SUPPORT OF**
16                                             **DEFENDANTS AGUILAR, DUNCAN,**
                        v.                     **HERNANDEZ, LUNA, SALCEDO, AND**
17                                             **VELASQUEZ'S MOTION TO DISMISS**

18   **STATE OF CALIFORNIA, et al.,**          Date:        June 27, 2023
                                               Time:        1:30 p.m.
19                                 Defendants. Courtroom:   6, 14th Floor
                                               Judge:       The Honorable John A.
20                                                          Mendez
                                               Action Filed: September 16, 2022
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Factual Allegations ......................................................................................................... 2

Plaintiff's Causes of Action ........................................................................................... 3

Standard on Motion to Dismiss ...................................................................................... 3

I.     Plaintiffs' Claims Against the Defendants in Their Official Capacities Are Barred by the Eleventh Amendment ........................................................... 4

II.    Plaintiffs Fail to State a Claim for a § 1983 Violation. ............................... 5

     A.    Defendants Cannot Be Held Liable in Their Official Capacities Under § 1983 Because Official Capacity Defendants Are Not "Persons" Under the Statute. ....................................................... 5

     B.    Plaintiffs Fail to Plead Facts Supporting Their Claims of a Constitutional Violation. ............................................................... 6

          1.    Plaintiffs Fail to State a Claim for Excessive Force. ..................... 6

          2.    Plaintiffs Fail to State a Claim for Failure to Protect. ................... 7

          3.    Plaintiffs Fail to State a Claim for Cruel and Unusual Punishment ............................................................................. 9

          4.    Plaintiffs Fail to State a Claim for Unconstitutional Municipal Custom. ............................................................... 9

III.    The Court Should Decline to Exercise Jurisdiction Over Plaintiffs' State-Law Claims. ......................................................................................... 10

IV.    The State-Law Claims Should Be Dismissed. ........................................... 10

     A.    Plaintiffs Fail to State a Claim for Violation of Government Code Section 845.6 .......................................................................... 10

B. Plaintiffs Fail to State a Claim for Wrongful Death and Negligent Supervision. ........ 12

V.    Plaintiff's State Law Claims Are Barred by the Government Claims Act. .......... 13

VI.    Plaintiffs Fail to Plead Compliance with the Government Claims Act. ............... 14

Conclusion ..................................................................................................................... 15

i

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:22-cv-01638-JAM-DB)

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

5
*Adams v. Johnson*
355 F.3d 1179 (9th Cir. 2004) ............................................................................. 3

6
*Ashcroft v. Iqbal*
7
556 U.S. 662 (2009) .............................................................................. *passim*

8
*Balistreri v. Pacifica Police Dept*.
901 F.2d 696 (9th Cir. 1990) ............................................................................. 3

9
*Bell Atlantic Corp. v. Twombly*
10
550 U.S. 544 (2007) ....................................................................................... 3

11
*Blair v. Superior Court (Dep't of Transp.)*
12
218 Cal. App. 3d 221 (1990) .......................................................................... 13

13
*Brown v. Cal. Dep't of Corr.*
554 F.3d 747 (9th Cir. 2009) ........................................................................... 4

14
*BV Eng'g v. Univ. of Cal., L.A.*
15
858 F.2d 1394 (9th Cir. 1988) ......................................................................... 5

16
*Castaneda v. Dep't of Corrs. & Rehab.*
17
212 Cal. App. 4th 1051 (2013), (May 1, 2013) ....................................... 10, 11, 12

18
*Cholla Ready Mix, Inc. v. Civish*
382 F.3d 969 (9th Cir. 2004) ........................................................................... 4

19
*Farmer v. Brennan*
20
511 U.S. 825 (1994) ....................................................................................... 7

21
*Fernelius v. Pierce*
22
22 Cal.2d 226 (1943) .................................................................................... 13

23
*Hearns v. Terhune*
413 F.3d 1036 (9th Cir. 2005) ......................................................................... 7

24
*Howlett v. Rose*
25
496 U.S. 356 (1990) ....................................................................................... 5

26
*Hudson v. McMillian*
27
503 U.S. 1 (1992) .......................................................................................... 6

28

1

## **TABLE OF AUTHORITIES**
### **(continued)**

2
**Page**

3
*Ivey v. Board of Regents of the Univ. of Alaska*

4
    673 F.2d 266 (9th Cir. 1982)..............................................................................3

5
*Jones v. Community Redevelopment Agency*
    733 F.2d 646 (9th Cir. 1984)...........................................................................4, 7

6

7
*Leer v. Murphy*
    844 F.2d 628 (9th Cir. 1988)..............................................................................8

8
*Levine v. Diamanthuset, Inc.*
    950 F.2d 1478 (9th Cir. 1991).............................................................................4

9

10
*Lewis v. Clarke*
    581 U.S. 155 (2017)............................................................................................5

11
*Livingston v. Sanchez*
    No. 1:10-cv-01152-LJO-BAM PC, 2012 U.S. Dist. LEXIS 112897 (E.D. Cal.

12
    Aug. 9, 2012)....................................................................................................13

13
*Martinez v. Stanford*

14
    323 F.3d 1178 (9th Cir. 2003).............................................................................6

15
*McLaughlin v. Superior Court*

16
    29 Cal. App. 3d 35 (1972)................................................................................14

17
*Mohsin v. Cal. Dep't of Water Res.*
    52 F. Supp. 3d 1006 (E.D. Cal. 2014)........................................................14, 15

18

19
*Monell v. Dept. of Social Serv.*
    436 U.S. 658 (1978)...................................................................................*passim*

20
*Mullis v. United States Bankr. Ct.*

21
    828 F.2d 1385 (9th Cir. 1987).............................................................................4

22
*Paslay v. State Farm Gen. Ins. Co.*
    248 Cal. App. 4th 639 (2016)...........................................................................11

23

24
*Pena v. Gardner*
    976 F.2d 469 (9th Cir. 1992).............................................................................4

25
*Pennhurst State Sch. & Hosp. v. Halderman*

26
    465 U.S. 89 (1984)............................................................................................4

27
*Quern v. Jordan*
    440 U.S. 332 (1979)..........................................................................................4

28

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Quiroz v. Seventh Ave. Ctr.*
  140 Cal. App. 4th 1256 (Cal. App. 2006) .......................................................... 12

*Riggle v. State of Cal.*
  577 F.2d 579 (9th Cir. 1978) ............................................................................ 5

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ............................................................................ 4

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ........................................................................... 3

*Watson v. State of California*
  21 Cal. App. 4th 836 (1993) ............................................................................. 13

*Welch v. State Dep't of Highways & Public Transp.*
  483 U.S. 468 (1987) ......................................................................................... 4

*Will v. Mich. Dep't of State Police*
  491 U.S. 58 (1989) .............................................................................. 5, 6, 10

**STATUTES**

28 U.S.C.
  § 1367(c)(3) .................................................................................................... 10

42 U.S.C.
  § 1983 ....................................................................................................... *passim*

California Government Claims Act ........................................................... 5, 13, 14, 15

California Government Code
  § 845.6 ............................................................................................ 10, 11, 12
  § 901 et seq. .................................................................................................... 2
  § 910 .............................................................................................................. 13
  § 911.2 ............................................................................................................ 14
  § 911.4 ............................................................................................................ 14
  § 911.6(c) ........................................................................................................ 14
  § 915(b) ........................................................................................................... 14
  § 945.4 ...................................................................................................... 13, 14
  § 946.6 ............................................................................................................ 14

California Tort Claims Act ........................................................................... 14

# TABLE OF AUTHORITIES
### (continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Eighth Amendment ........................................................................................ 6
    Eleventh Amendment ............................................................................1, 4, 5, 15

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 8 ............................................................................................................ 3
    Rule 12(b)(6) .............................................................................................. 3, 4

**INTRODUCTION**

The Plaintiffs in this case are the minor child (D.S.A.), the mother, and the Estate of Decedent Kenneth Sumner.  In their second amended complaint (SAC), they allege that the Decedent was injured in his cell at the Substance Abuse Treatment Facility (SATF) in Corcoran, California, resulting in grave injuries and ultimately his death.

Plaintiffs claim that Defendant Correctional Officers Aguilar, Duncan, Hernandez, Luna, and Velasquez, and Correctional Sergeant Salcedo (Defendants), in both their individual and official capacities, are liable for Decedent's death under 42 U.S.C. § 1983 and various state-law theories.

In their official capacities, Defendants are immune from suit for damages in federal court under the Eleventh Amendment, and cannot be sued under 42 U.S.C. § 1983.  Therefore, all of the official-capacity claims should be dismissed.

As to the claims against Defendants in their individual capacities, Plaintiffs fail to plead facts that show Defendants are liable for Plaintiff's death, whether under a federal-law or state-law theory.  As to Defendants' conduct, Plaintiffs plead only that Defendant Duncan observed an incident in Decedent's cell between Decedent and his cellmate, and activated his personal alarm. The remaining Defendants responded to the alarm and restrained the cellmate.  Decedent was in cardiac arrest and was airlifted to the hospital, but later died from his injuries.  None of Defendants' alleged conduct shows they are liable for Decedent's death.  Defendants are sued simply because they were the officers who responded when Decedent's cellmate attacked him. That response does not make Defendants liable.

The SAC further makes conclusory statements that Decedent's death "could not have occurred absent negligence and civil rights violations" (SAC ¶ 35), but those assertions are not supported by the facts pled, and need not be taken as true on a motion to dismiss.  The facts pled in the SAC, even if true, do not show that Defendants are liable under any theory.

In addition, Plaintiffs assert a *Monell* claim against Defendants.  The *Monell* case allows § 1983 lawsuits against local government entities.  It has no relevance or application in this lawsuit against California state employees.

1

As to the state-law claims, Plaintiffs failed to plead compliance with the California government claims requirements (Cal. Gov't Code section 901 et seq.) and failed to comply with those requirements.  The SAC should be dismissed in its entirety.

## FACTUAL ALLEGATIONS

Plaintiffs allege as follows.  Decedent was thirty-seven years old and incarcerated at SATF in July 2021.  (SAC ¶ 19, ECF No. 27.)  On July 7, 2021, Decedent was injured in his cell, leading to Decedent's hospitalization and ultimately his death five days later.  (SAC ¶¶ 19, 33.)  According to the SAC, incident reports from SATF staff suggest that Decedent was murdered by his cellmate, Okalani Latu.  (SAC ¶¶ 21, 23-25, 34.)  However, the SAC further asserts that Decedent was attacked by someone wearing boots, and that boots are not available to inmates.  (SAC ¶¶ 19, 32.)

As to Defendants, the SAC alleges that officer Duncan heard loud knocking noises coming from the cell shared by Decedent and Latu.  (SAC ¶ 22.)  Officer Duncan ordered Latu to "stop his actions" but the noises continued, and Duncan saw what turned out to be blood "coming from the bottom of the cell."  (SAC ¶ 23.)  Duncan then activated his personal alarm device.  (SAC ¶ 24.)

Officer Aguilar and Sergeant Salcedo were first to respond to the scene.  (SAC ¶ 26.)  "[W]ithin moments after Officer Duncan activated the alarm," Officers Hernandez and Velasquez arrived on the scene. (SAC ¶ 27.)  Sergeant Salcedo instructed Officer Duncan to open the cell door, and Latu was placed in handcuffs.  (SAC ¶ 28.)  Officer Luna then arrived to help detain Latu.  (SAC ¶ 29.)  Decedent was airlifted to Kaweah Delta Medical Center.  (SAC ¶ 31.)

The admitting doctor noted Decedent was pulseless on arrival, and further noted stellate lacerations on Decedent's forehead.  (SAC ¶¶ 31-32.)  Decedent died five days later.  (SAC ¶ 33.)

The SAC makes no further factual allegations, instead making conclusory statements that the "circumstances surrounding [Decedent's] death leads [sic] to an inference of negligence and civil rights violations," that Decedent's "death could not have occurred unless Defendant officers made intentional decisions that placed [Decedent] in substantial risk," and that Defendants "either participated in or allowed [Decedent] to be physically beaten."  (SAC ¶¶ 17, 48.)

2

**PLAINTIFF'S CAUSES OF ACTION**

Plaintiffs assert federal causes of action against Defendants for excessive force (SAC ¶¶ 37-43), cruel and unusual punishment (which appears to be a second excessive force cause of action) (SAC ¶¶ 44-51), failure to protect (SAC ¶¶ 52-60), and under *Monell* for unconstitutional municipal custom (SAC ¶¶ 61-64).

Plaintiffs further assert state-law causes of action for failure to furnish medical care (SAC ¶¶ 65-70), wrongful death (SAC ¶¶ 71-74), and negligent supervision (SAC ¶¶ 75-77).

Plaintiffs seek only damages, and do not seek an injunction.  (SAC at 14-15.)

**STANDARD ON MOTION TO DISMISS**

A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557.)  The interpretation of Federal Rule of Civil Procedure 8 in *Twombly* governs all civil actions, including claims based on state law, in federal court. *Iqbal*, 556 U.S. 662, 684 (2009).

Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). Similarly, vague allegations of official participation in civil rights violations are not sufficient to defeat a motion to dismiss. *Ivey v. Board of Regents of the Univ. of Alaska*, 673 F.2d 266, 268

3

1    (9th Cir. 1982); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  "The plaintiff must 'allege

2    with at least some degree of particularity overt acts which defendants engaged in' that support

3    plaintiff's claim." *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984)

4    (citations omitted).

5         In ruling on a motion to dismiss under Rule 12(b)(6), the court may not consider material

6    outside the complaint.  *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991).

7    However, facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v.

8    United States Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  Further, the court need not accept

9    as true allegations that contradict matters properly subject to judicial notice or unwarranted

10   deductions of fact on a motion to dismiss.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

11   (9th Cir. 2001).

12   **I.    PLAINTIFFS' CLAIMS AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES
13          ARE BARRED BY THE ELEVENTH AMENDMENT.**

14        The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not

15   be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

16   United States by Citizens of another State, or Citizens or Subjects of any Foreign State."  U.S.

17   Const. amend. XI.  Although the amendment does not by its terms prohibit an action against a

18   state by one of the state's own citizens, the Supreme Court has recognized such a prohibition.  *See*

19   *Welch v. State Dep't of Highways & Public Transp.*, 483 U.S. 468 (1987) (plurality) (citing *Hans*

20   *v. Louisiana*, 134 U.S. 1, 10 (1890)).  The immunity extends to claims arising under both state

21   law, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984), and federal law,

22   *Quern v. Jordan*, 440 U.S. 332, 341 (1979).  The Eleventh Amendment "precludes the

23   adjudication of pendent state law claims against nonconsenting state defendants in federal

24   courts." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).  The immunity

25   extends to the state and its agencies, including the California Department of Corrections and

26   Rehabilitation (CDCR).  *See Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009)

27   ("agencies of the state are immune from private damage actions" under § 1983).  The immunity

28   further extends to state agency employees sued in their official capacities, because those lawsuits

4

1    "represent only another way of pleading an action against an entity."  *Lewis v. Clarke*, 581 U.S.

2    155, 162 (2017)

3          "A state's waiver of sovereign immunity in its own courts does not effect a waiver of its

4    eleventh amendment immunity in the federal courts."  *BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d

5    1394, 1396 (9th Cir. 1988).  The Ninth Circuit has held that California did not waive its Eleventh

6    Amendment immunity by enacting the California Government Claims Act.  *Riggle v. State of*

7    *Cal.*, 577 F.2d 579, 586 (9th Cir. 1978).

8          The Supreme Court in *Monell v. Dept. of Social Serv.,* 436 U.S. 658 (1978) recognized a

9    right to sue local government units in federal court under 42 U.S.C. § 1983.  That right was not

10   extended to suits against states or their agencies.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

11   70 (1989).

12         Defendants are employees of a California state agency, CDCR.  (SAC ¶¶ 4-9.)  Plaintiffs

13   cannot sue Defendants in their official capacities in federal court unless California consents.

14   California has not waived its sovereign immunity.  Accordingly, all claims against the Defendants

15   in their official capacities should be dismissed.

16   **II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR A § 1983 VIOLATION.**

17         **A.     Defendants Cannot Be Held Liable in Their Official Capacities Under
               § 1983 Because Official Capacity Defendants Are Not "Persons" Under the**
18             **Statute.**

19         Each of Plaintiffs' federal claims alleges that Defendants are liable under 42 U.S.C. § 1983.

20   (SAC ¶¶ 37-64.)  Section 1983 states, in relevant part:

21             Every person who, under color of any statute, ordinance, regulation, custom, or
               usage, of any State or Territory or the District of Columbia, subjects, or causes to be
22             subjected, any citizen of the United States or other person within the jurisdiction
               thereof to the deprivation of any rights, privileges, or immunities secured by the
23             Constitution and laws, shall be liable to the party injured in an action at law . . .

24   42 U.S.C. § 1983.  A state is not a person for purposes of section 1983.  *Will v. Mich. Dep't of*

25   *State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their

26   official capacities are 'persons' under § 1983.")  State agencies, such as CDCR, are also not

27   persons for purposes of the statute.  *See, e.g., Howlett v. Rose*, 496 U.S. 356, 365 (1990) (a state

28   agency is not a 'person' within the meaning of § 1983).  Officials acting in their official

                                                  5

1   capacities are also not persons under § 1983, although "a state official in his or her official

2   capacity, when sued for injunctive relief, would be a person under § 1983 because official-

3   capacity actions for prospective relief are not treated as actions against the State." *Will,* 491 U.S.

4   at 71.  Here, Defendants are sued only for damages, and not for injunctive relief.  (SAC at 14-15.)

5   Accordingly they are not persons for purposes of § 1983, and cannot be held liable under the

6   statute.

7   **B.   Plaintiffs Fail to Plead Facts Supporting Their Claims of a Constitutional**
       **Violation.**

8

9   **1.   Plaintiffs Fail to State a Claim for Excessive Force.**

10   Plaintiffs' first cause of action asserts a claim for excessive force in violation of the Eighth

11   Amendment (SAC at 8-9).  An excessive force claim requires "the unnecessary and wanton

12   infliction of pain" by government officials.  *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir.

13   2003) (internal quotation marks and brackets omitted).  The excessive force determination turns

14   on "whether force was applied in a good-faith effort to maintain or restore discipline, or

15   maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

16   The SAC does not plead facts showing a use of excessive force by any Defendant.  Instead,

17   the SAC asserts only that Defendant Duncan observed an incident in Decedent's cell and

18   activated his personal alarm, and the other individual Defendants responded to that alarm.  (SAC

19   ¶¶ 22-29.)  Those facts, the only facts pled about each individual Defendant specifically, do not

20   show that Defendants used excessive force.  (*Id.*)

21   The SAC further makes the conclusory assertion that "Defendants knowingly and

22   intentionally employed force that was harmful, unwanted, and excessive, and was employed with

23   the intent of causing pain to Plaintiff for a purpose unrelated to any legitimate official objective."

24   (SAC ¶ 39.)  That is a conclusory "formulaic recitations of the elements," which need not be

25   taken as true.  *Iqbal*, 556 U.S. *at* 678.  The SAC does not supply any factual support for this

26   verbatim listing of the elements of an excessive force claim.  It does not state who (apart from

27   Defendants generically) used force, when they used force, how they used force, or where they

28

6

1  used force.  (*See generally* SAC.)  It is therefore "no more than [a] conclusion [and] not entitled

2  to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

3      Similarly, the SAC asserts that Defendants "either participated in or allowed [Decedent] to

4  be physically beaten."  (SAC ¶ 48.)  Here the SAC asserts that Defendant may have used force.

5  Asserting "a sheer possibility" is insufficient to state a claim.  *Iqbal,* 556 U.S. at 678.  Again, the

6  SAC fails to plead *facts* showing that Defendants used any force, let alone excessive force. (*See*

7  *generally* SAC.)

8      The SAC further concludes that "[t]he circumstances surrounding [Decedent's] gruesome

9  and questionable death leads to an inference of negligence and civil rights violations" and that

10  "[Decedent's] untimely death could not have happened absent negligence and civil rights

11  violations."  (SAC ¶ 35.)  Here Plaintiffs simply recite the conclusion they want the court to

12  reach, without identifying any conduct on Defendants' part to support a conclusion that

13  Defendants violated Decedent's rights.  *See Jones*, 733 F.2d at 649 (to state a claim, the plaintiff

14  must 'allege with at least some degree of particularity overt acts which defendants engaged in'

15  that support plaintiff's claim" (citations omitted)).  Again, these conclusory allegations need not

16  be taken as true.  Because the SAC fails to make non-conclusory allegations showing that any

17  Defendant used excessive force, the excessive force claims should be dismissed.

18      **2.      Plaintiffs Fail to State a Claim for Failure to Protect.**

19      For their third cause of action, Plaintiffs assert a claim for failure to protect.  To establish a

20  Constitutional violation based on a failure to protect Decedent from attacks by another inmate,

21  Plaintiffs must show: (1) that officials exposed Decedent to an objectively substantial risk of

22  serious harm; and (2) that the officials were deliberately indifferent to that risk — that is, that

23  they knew of the substantial risk, but disregarded it.  *See Hearns v. Terhune*, 413 F.3d 1036, 1040

24  (9th Cir. 2005).  "[T]he official must both be aware of facts from which the inference could be

25  drawn that a substantial risk of serious harm exists, and he must also draw the inference."

26  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Further, liability under § 1983 requires a showing

27  that a defendant's personal involvement or failure to perform legally required duties caused the

28

7

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:22-cv-01638-JAM-DB)

1  plaintiff's constitutionally protected rights to be violated.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th

2  Cir. 1988).

3      Plaintiffs plead no facts showing that any Defendant knew of, and disregarded a substantial

4  risk to Decedent.  As to all Defendants except Duncan, the SAC pleads that they responded

5  almost immediately to Duncan's alarm and acted to restrain Latu.  (SAC ¶¶ 26-29.)  Those facts

6  do not show that Defendants knew of, and disregarded, a substantial risk of harm to Decedent.

7      As to Duncan, the SAC asserts that he "dismissed the sounds of a violent commotion within

8  the cell with a simple request for Mr. Latu to 'stop his actions.'"  (SAC ¶ 55.)  Those facts do not

9  state a cause of action for failure to protect.  As stated in the SAC, Duncan did not disregard the

10  "violent commotion" he observed in the cell, he attempted to end it by ordering Latu to stop.

11  (SAC ¶¶ 23, 55.)  That is not deliberate indifference.

12      The SAC further asserts that Duncan did not activate his personal alarm until he "witnessed

13  blood coming from the bottom of the cell door."  (SAC ¶ 24.)  Again, this does not state a claim

14  for deliberate indifference.  The SAC does not state any facts showing that Duncan should have

15  sounded the alarm earlier, does not state how much time passed before Duncan activated his

16  alarm, and does not state any facts showing that an earlier alarm press would have made a

17  difference.  (SAC ¶¶ 24-25.)  According to the SAC, Duncan responded immediately to the

18  commotion by ordering Latu to stop, then pressed his alarm once it became clear an alarm

19  response was needed.  That is not ignoring a substantial risk; that is responding to the risk.

20  Plaintiffs' failure to protect claim should be dismissed.

21      The SAC also asserts that Defendants failed to "conduct routine cell checks," which

22  supposedly demonstrates deliberate indifference.  (SAC ¶ 56.)  But Plaintiffs fail to plead any

23  other facts about the supposedly required cell checks, such as who should have conducted them,

24  when they should have been done, and crucially, whether any Defendant knew of a substantial

25  risk to Decedent if a cell check was not conducted, and ignored that risk.  (*See generally* SAC.)

26  According to the SAC, Duncan was able to hear the commotion of the incident from his post

27  (SAC ¶ 22), so another officer's cell check would not have any difference.  The SAC's assertions

28

8

1 regarding cell checks do not show that any Defendant knew of, and disregarded a substantial risk

2 of serious harm to Decedent.

3    The SAC further makes conclusory allegations with regard to failure to protect, such as

4 "[Decedent's] untimely death could not have occurred unless Defendant officers made intentional

5 decisions that placed Sumner in substantial risk." (SAC ¶ 54.)  This is simply a recitation of the

6 conclusion Plaintiffs would like the court to reach, and therefore it need not be taken as true.  *See*

7 *Iqbal*, 556 U.S. *at* 678.  Similarly, the assertion that "Defendant officers failed to take reasonable

8 available measures to abate the substantial risk of harm to [Decedent]" (SAC ¶ 55) says nothing

9 about the supposed reasonable measure or the supposedly known substantial risk of harm.  It is

10 simply a generic recitation of the elements, which cannot save the SAC from dismissal.

11        **3.    Plaintiffs Fail to State a Claim for Cruel and Unusual Punishment**

12    Plaintiffs' second cause of action, for cruel and unusual punishment, appears to attempt to

13 assert both excessive force and failure to protect claims.  (*See* SAC ¶ 47 (generically pleading the

14 excessive force elements); SAC ¶ 49 (asserting that Defendants actions were done "with

15 deliberate indifference to the rights and safety of Decedent").)  Accordingly, the second cause of

16 action appears to be redundant with the first and third causes of action, and should be dismissed

17 that reason.  In addition, the second cause of action pleads no additional facts over and above the

18 facts pled with regard to the first and third causes of action, and therefore the second cause of

19 action should be dismissed for the same reasons as stated above for the first and third.  (*See supra*

20 §§ II.B.1-2.)

21        **4.    Plaintiffs Fail to State a Claim for Unconstitutional Municipal**
22            **Custom.**

23    Plaintiffs' fourth cause of action asserts a *Monell* claim for Unconstitutional Municipal

24 Custom.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held

25 that "a local government" may be sued under § 1983 "when execution of a government's policy

26 or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

27 represent official policy, inflicts the injury." *Id.  Monell* has no application here.  Defendants are

28 not local government entities, and, in their official capacities, are not persons capable of being

9

1   sued under § 1983. *See, e.g., Will,* 491 U.S. at 71.  Accordingly, Plaintiffs fail to state a claim for

2   a *Monell* violation.

3   **III.   THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER PLAINTIFFS'**

4          **STATE-LAW CLAIMS.**

5          As set forth above, Plaintiffs' federal claims should be dismissed.  (*See supra* §§ I-II.)

6   Once all federal claims are dismissed, the Court should decline supplemental jurisdiction over the

7   state-law claims, and dismiss any state-law claims that might otherwise remain.  *See* 28 U.S.C.

8   § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction after dismissing

9   "all claims over which it has original jurisdiction").

10  **IV.   THE STATE-LAW CLAIMS SHOULD BE DISMISSED.**

11         **A.   Plaintiffs Fail to State a Claim for Violation of Government Code Section**

12               **845.6**

13         California Government Code section 845.6 provides that generally neither a public entity

14  nor a public employee is liable for injury resulting from "the failure of [a public] employee to

15  furnish or obtain medical care for a prisoner in his custody." Cal. Gov't Code § 845.6.  The

16  statute, however, provides an exception "if the employee knows or has reason to know that the

17  prisoner is in need of immediate medical care and he fails to take reasonable action to summon

18  such medical care."  *Id.*  California courts have narrowly interpreted section 845.6 to create

19  limited liability when: (1) the public employee knows or has reason to know of the need, (2) of

20  immediate medical care, and (3) fails to take reasonable action to summon such medical care.

21  *Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013), review denied

22  (May 1, 2013).  "[S]ection 845.6 creates out of the general immunity a limited cause of action

23  against a public entity for its employees' failure to summon immediate medical care only . . . .

24  The statute does not create liability of the public entity for malpractice in furnishing or obtaining

25  that medical care."  *Id.* (emphasis in original).

26         The SAC asserts that the Defendants apart from Duncan "failed to conduct timely safety

27  checks . . . and failed to be within earshot or eyesight of [Decedent's] cell."  (SAC ¶ 66.)  That

28  fails to state a claim under section 845.6 because it fails to show that any Defendant knew of a

10

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:22-cv-01638-JAM-DB)

1   need for medical care and failed to summon it.  (*Id.*)  Instead, Plaintiffs apparently assert that

2   those Defendants "had reason to know" of Decedent's medical need.  For an 845.6 violation,

3   there must be "actual or constructive knowledge that the prisoner is in need of immediate medical

4   care."  *Castaneda,* 212 Cal. App. 4th at 1070.  "[C]onstructive knowledge, means knowledge that

5   one using reasonable care or diligence should have, and therefore is attributed by law to a given

6   person . . . .  The existence of constructive knowledge is assessed by reference to an objective

7   reasonable person measure, since there is no other way to measure it."  *Paslay v. State Farm Gen.*

8   *Ins. Co.*, 248 Cal. App. 4th 639, 657-58 (2016).  Here, the facts pled do not support attributing

9   constructive knowledge of Decedent's medical need to those Defendants.  The facts pled show

10  that they were not nearby, and therefore could not hear or see Decedent at the relevant time.

11  (SAC ¶¶ 26-29, 66.)  An objective reasonable person, in those Defendants' positions, would not

12  know that Decedent was in need of immediate medical care.  The SAC therefore fails to state a

13  claim for a violation of section 845.6 as to those Defendants.

14          As to Duncan, the SAC alleges that he "failed to approach the cell when there were 'loud

15  knocking noises.'"  (SAC ¶ 66.)  According to the SAC, Duncan later activated his personal

16  alarm to summon medical care, but "it is unknown how long Mr. Sumner lay in cardiac arrest

17  before receiving medical attention."  (SAC ¶¶ 24-25, 66.)  Plaintiff's assertion of an 845.6

18  violation therefore rests on the purported delay between Duncan hearing noises from the cell and

19  activating his alarm.  But the SAC fails to identify the length of the delay, or state that there was

20  any delay at all.  (SAC ¶¶ 22-24.)  Based on the facts pled in the SAC, Duncan could have

21  activated his alarm one second after observing an incident in Decedent's cell, or fifteen minutes

22  thereafter.  (*Id.*)  In other words, under the facts pled in the SAC, it is possible Duncan properly

23  summoned immediate medical care, and it is possible that he didn't.  Pleading facts showing that

24  it is *possible* that a defendant is liable does not meet *Iqbal*'s plausibility standard.  *Iqbal,* 556 U.S.

25  at 678 (holding that a complaint must plead facts that show more than "a sheer possibility" that a

26  defendant is liable . . . and that [w]here a complaint pleads facts that are "merely consistent with"

27  liability, that is insufficient to state a claim).

28  / / /

1    The SAC also asserts conclusory statements with regard to a violation under section 845.6,

2    such as "Defendant officers . . . failed to take reasonable action to summons medical care for

3    Mr. Sumner despite having reason to know that he was in need of immediate medical care, in

4    violation of Cal. Gov't Code §845.6." That is simply a recitation of the elements of the claim,

5    and need not be taken as true. (*See supra* § II.B.1, *Iqbal,* 556 U.S. at 678-79.)

6    In addition, the SAC makes conclusory statements that "officers failed to provide necessary

7    medical care" or failed "to furnish" that care. (SAC at 12-13.) Those allegations fail to state a

8    claim both because they are conclusory and because Defendants are immune under the first clause

9    of section 845.6, which states that public employees are not liable "for failure of the employee to

10   furnish or obtain medical care for a prisoner." Cal. Gov't Code § 845.6.

11   Because they do not plead facts showing a failure to summon immediate medical care,

12   Plaintiffs fail to state a claim for relief under section 845.6.

13   **B.    PLAINTIFFS FAIL TO STATE A CLAIM FOR WRONGFUL DEATH AND
       NEGLIGENT SUPERVISION.**

14

15   For their sixth and seventh causes of action, Plaintiffs assert that Defendants "were liable

16   for their intentional or reckless or negligent actions by failing to find and address Mr. Sumner's

17   medical needs for an unspecified amount of time." (SAC ¶¶ 72, 76.) Those allegations are

18   insufficient to state a claim for relief because Defendants are immune from suit for failure to

19   furnish medical care. Cal. Gov't Code § 845.6 ("Neither a public entity nor a public employee is

20   liable for injury proximately caused by the failure of the employee to furnish or obtain medical

21   care for a prisoner in his custody.") Plaintiffs' allegation that Defendants failed to "find and

22   address" Decedent's medical needs do not fall under the narrow exception for *failure to summon*

23   medical care for a known immediate need. *See Castaneda*, 212 Cal. App. 4th at 1070, *supra*

24   § IV.A. The sixth and seventh causes of action plead facts showing that Defendants are immune,

25   and therefore fail to state claims for relief. *See id.*

26   Moreover, the SAC fails to plead facts showing liability for wrongful death or negligent

27   supervision. A cause of action for wrongful death consists of a tort (negligence or other wrongful

28   act), the resulting death, and the damages suffered by the heirs. *Quiroz v. Seventh Ave. Ctr.*, 140

12

1    Cal. App. 4th 1256, 1263 (Cal. App. 2006).  As set forth above, the facts (not conclusions) pled in

2    the SAC do not show that any of the Defendants' conduct caused Plaintiff's death.  (*See supra*

3    § II.B.1-2.)  Instead the SAC pleads only that Duncan observed an incident in Decedent's cell and

4    activated his personal alarm, and that the remaining Defendants responded.  (SAC ¶¶ 22-29.)

5    That does not show the breach of duty required for a wrongful death claim.

6          As to the negligent supervision claim, the SAC fails to plead any facts as to supervisory

7    conduct of any Defendant.  The elements of a cause of action for negligent supervision are:

8    (1) Defendant supervised the employee; (2) Defendant knew that assigning a particular task to the

9    employee would create an unreasonable risk of harm to others; (3) Defendant assigned that task to

10   the employee; and (4) Because of being incompetent or unfit, the employee in performing the task

11   or activity assigned, caused plaintiff to suffer injury.  *See Fernelius v. Pierce*, 22 Cal.2d 226, 233-

12   241 (1943).  Plaintiff fails to plead that any Defendant supervised any other Defendant, or that

13   any Defendant assigned a subordinate with a task creating an unreasonable risk of harm.  (*See*

14   *generally* SAC.)  Accordingly the SAC fails to state a claim for negligent supervision.

15   **V.    PLAINTIFF'S STATE LAW CLAIMS ARE BARRED BY THE GOVERNMENT CLAIMS**

16   **ACT.**

17         Under the California Government Claims Act, no action for damages may be commenced

18   against a public entity or employee unless a claim satisfying California Government Code section

19   910 has been submitted and denied.  Cal. Gov't Code § 945.4; *Blair v. Superior Court (Dep't of*

20   *Transp.)*, 218 Cal. App. 3d 221, 224 (1990).  Compliance with the Government Claims Act "is an

21   element of the cause of action … and failure to file a claim is fatal to a cause of action."

22   *Livingston v. Sanchez,* No. 1:10-cv-01152-LJO-BAM PC, 2012 U.S. Dist. LEXIS 112897, at *7

23   (E.D. Cal. Aug. 9, 2012) (internal citations and quotations omitted).

24         "[E]ach cause of action must [be] reflected in a timely claim.  In addition, the factual

25   circumstances set forth in the written claim must correspond with the facts alleged in the

26   complaint; even if the claim were timely, the complaint is vulnerable to a [motion to dismiss] if it

27   alleges a factual basis for recovery which is not fairly reflected in the written claim."  *Watson v.*

28

13

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (2:22-cv-01638-JAM-DB)

1  *State of California*, 21 Cal. App. 4th 836, 844 (1993) (quoting *Nelson v. State of California*, 139

2  Cal.App.3d 72, 79 (1982)).

3      A claim relating to a cause of action for death must be presented not later than six months

4  after the accrual of the cause of action.  Cal. Gov't Code § 911.2.  If the six-month deadline is

5  missed, the claimant may, before one year has passed since the accrual of the cause of action,

6  make a written application for leave to present the late claim.  Cal. Gov't Code § 911.4.  If the

7  board fails to act on the written application within 45 days of its presentation, the application is

8  deemed denied.  Cal. Gov't Code § 911.6(c).  Where the application is deemed to be denied, the

9  applicant must then petition the superior court for relief from the requirements of section 945.4

10  under Government Code section 946.6.  *See McLaughlin v. Superior Court*, 29 Cal. App. 3d 35,

11  38 (1972) ("Compliance with section 946.6 is mandatory unless excused on the basis of equitable

12  estoppel.")

13      Here, the cause of action accrued at the time of Decedent's death on July 12, 2021.

14  Plaintiffs Sumner and Estate of Sumner each filed applications to file a late claim, which were

15  received by the board on March 8, 2022.  (Req. for Jud. Not. Ex. A-B.)  The board did not

16  respond, and accordingly the late claim applications were deemed rejected under section 911.6(c)

17  on April 22, 2022.  (*See id.*)  Plaintiffs then had six months to file a petition with the superior

18  court for relief under section 946.6(b) from the presumption that the claim is barred.  Plaintiffs

19  did not do so, and do not plead otherwise.  (*See generally* SAC.)  Accordingly, Plaintiff have not

20  been relieved of the requirements of section 945.4, and cannot bring a state-law action for

21  damages against public entities and employees.  The state-law claims should be dismissed.

22  **VI.   PLAINTIFFS FAIL TO PLEAD COMPLIANCE WITH THE GOVERNMENT CLAIMS ACT.**

23      Failure to plead compliance with the Government Claims Act "subjects a claim to dismissal

24  for failure to state a cause of action."  *Mohsin v. Cal. Dep't of Water Res.*, 52 F. Supp. 3d 1006,

25  1018 (E.D. Cal. 2014).  Here, Plaintiffs assert that they "filed a notice of government claim with

26  the Los Angeles County Board of Supervisors pursuant to the California Tort Claims Act."  (SAC

27  ¶ 17.)  A claim, or an application to file a late claim, directed to the state or a state entity, must be

28  delivered to the Department of General Services.  Cal. Gov't Code § 915(b).  Plaintiffs' allegation

14

1   that they submitted a claim to the Los Angeles County Board of Supervisors therefore does not

2   plead compliance.  The claims presentation requirement is an element of any state-law claim

3   against a public entity or its employees.  *See Mohsin*, 52 F. Supp. 3d at 1017-18.  Because

4   Plaintiffs have not pled compliance, they have not pled an essential element of each of the state-

5   law claims, which should be dismissed.

6                                                   **CONCLUSION**

7            In their official capacities, Defendants are immune from Plaintiffs' claims under the

8   Eleventh Amendment, and are not subject to suit under § 1983.  Plaintiffs have failed to plead

9   facts sufficient to state any claim, have failed to comply with the Government Claims Act

10  requirements and failed to plead compliance.  The claims against the individual Defendants

11  should be dismissed.

12  Dated:  May 1, 2023                          Respectfully submitted,

13                                               ROB BONTA
                                                 Attorney General of California
14                                               JON S. ALLIN
                                                 Supervising Deputy Attorney General
15

16                                               */s/ Jeremy Duggan*

17                                               JEREMY DUGGAN
                                                 Deputy Attorney General
18                                               *Attorneys for Defendants*
                                                 *California Department of Corrections and*
19                                               *Rehabilitation, Aguilar, Duncan,*
                                                 *Hernandez, Luna, Salcedo, and Velasquez*
20  SA2022304427
    37120266.docx
21

22

23

24

25

26

27

28